IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUSAN HELEN SCOTT, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>KILOLO KIJAKAZI,[1] )<br>*Acting Commissioner of Social Security*, )<br>Defendant. | Civil Action No. 20-1793 |

ORDER

AND NOW, this 5th day of July 2022, the Court has considered the parties' motions for summary judgment and will order judgment in Defendant's favor. Substantial evidence supports the agency's final decision denying Plaintiff's application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq.* Accordingly, the Court will affirm it. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (citing 42 U.S.C. § 405(g)).[2]

---

[1] Kilolo Kijakazi is hereby substituted as Defendant pursuant to Federal Rule of Civil Procedure 25(d). This change does not impact the case. 42 U.S.C. § 405(g). The Clerk is directed to amend the docket to reflect the substitution.

[2] Plaintiff argues that the Administrative Law Judge's ("ALJ") decision—which is the Social Security Administration's ("SSA") final decision in this matter pursuant to 20 C.F.R. § 416.1481—is unsupported by substantial evidence and should be reversed. For the reasons explained herein, the Court will affirm the decision. The Court reviews the ALJ's decision to determine whether it is supported by substantial evidence. *Biestek*, 139 S. Ct. at 1152. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Reviewing courts will not find an ALJ's decision is supported by substantial evidence if the ALJ "reject[ed] pertinent or probative evidence" without explaining why. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008) (citing *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)). But where an ALJ has adequately explained his or her decision—including any rejection of probative evidence therein—and supported the decision with evidence that would satisfy a reasonable

mind, the reviewing court may not "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1182.

ALJs assess disability pursuant to a five-step evaluation wherein they ask five questions:

> (1) Is the claimant engaged in substantial gainful activity? (2) Does the claimant suffer from at least one "medically determinable ... impairment" that, on its own or combined with others, is severe and will lead to death or has lasted/will last for at least twelve months? (3) Are any of the claimant's impairments so severe that they meet or equal criteria for the Commissioner's list of presumptively disabling impairments? (4) With the claimant's impairments and resultant limitations, what is his [or her] remaining work ability, and would it permit a return to past work? (5) Finally, even if the claimant could not return to past work, would his [or her] remaining work ability (RFC), age, education, and work experience permit adjustment to other appropriate work?

*Thomas v. Saul*, No. CV 20-1604, 2021 WL 4429431, at *1 n.2 (W.D. Pa. Sept. 27, 2021) (citing 20 C.F.R. § 416.920(a)(4)(i)—(v)). The issues in this case largely pertain to the step-four inquiry where the ALJ must, as a preliminary matter, determine the claimant's residual functional capacity ("RFC"). A claimant's RFC is what the claimant "can still do despite [his/her] limitations." 20 C.F.R. § 416.945(a)(1). ALJs consider "all the relevant evidence" in a claimant's record to assess RFC. *Id.* This often includes medical opinion and/or prior administrative medical findings evidence which, for applications filed on or after March 27, 2017, ALJs consider pursuant to the regulations at 20 C.F.R. § 416.920c. Section 416.920c directs ALJs to assess the persuasiveness of medical opinion evidence using five factors: "[s]upportability," "[c]onsistency," "[r]elationship with the claimant," "[s]pecialization," and "[o]ther factors." *Id.* § 416.920c(b)—(c). The two most important factors are supportability and consistency. *Id.* § 416.920c(a).

Plaintiff challenges the ALJ's consideration of the medical opinion evidence, her own testimony, and the vocational expert's ("VE") testimony. She argues that had the ALJ appropriately weighed this evidence, he would have formulated a more restrictive RFC. As it was, the ALJ found Plaintiff could perform a modified range of sedentary work. (R. 17). He limited her use of bilateral upper extremities with a frequent "handle, finger, and feel" limitation. (*Id.*). To accommodate her mental impairments, the ALJ limited Plaintiff to, *inter alia*, performing only "simple, routine, repetitive tasks." (*Id.*). Arguing the ALJ did not go far enough, Plaintiff challenges his consideration of medical opinions offered by Dr. Anthony Smaldino, Drs. Martin Meyer and Julie Uran, Dr. Robert Eisler, and the providers who evaluated Plaintiff's physical and mental health for the Pennsylvania Department of Public Welfare.

2

Concerning the opinion offered by her treating podiatrist, Dr. Smaldino, Plaintiff argues that his opinion supports a more limiting RFC and that the ALJ should have afforded the opinion greater weight under the treating physician rule. However, the Court discerns no shortcoming in the ALJ's consideration of Dr. Smaldino's opinion. Plaintiff saw Dr. Smaldino in February 2018 for a diabetic foot exam and "complained of burning and numbness and tingling." (R. 413). Dr. Smaldino recorded a diagnosis of "Type 2 diabetes mellitus with diabetic neuropathy, unspecified." (R. 414). The following year, Dr. Smaldino filled out a physical capacity evaluation form wherein he confirmed Plaintiff's diabetes and neuropathy diagnoses with symptoms that included burning and numbness. (R. 882). Dr. Smaldino also checked several boxes to indicate that he believed Plaintiff could not use her hands for repetitive fine manipulation. (R. 883). He also indicated Plaintiff could never climb/balance/crouch/kneel/crawl (*id.*), and that Plaintiff would be absent from work five-to-ten days monthly. (R. 884).

The ALJ found Dr. Smaldino's opinions "not persuasive." (R. 23). Explaining that finding, the ALJ wrote that Dr. Smaldino's opinions were inconsistent with objective evidence in the record, other than Dr. Smaldino's own evaluation notes from the year prior. (R. 23—24). This explanation is adequate. Under the regulations applicable to applications filed on or after March 27, 2017, the "treating physician rule" has been displaced by the persuasiveness evaluation. *See* 20 C.F.R. § 416.920c. Pursuant thereto, a "medical source's treating relationship with the claimant is still a valid and important consideration," however, the most important factors are "consistency and supportability." *Eaton v. Comm'r of Soc. Sec.*, No. CV 20-273-E, 2022 WL 865826, at *1 n.2 (W.D. Pa. Mar. 23, 2022). Dr. Smaldino's 2019 opinions were rendered on a check-box form and lacked supporting explanations. *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) (explaining that opinions rendered by checkmark or filling in the blank are "weak evidence at best"). The ALJ explicitly addressed consistency when he found that Dr. Smaldino's opinions were inconsistent with most of the objective medical evidence: despite Dr. Smaldino's diagnosis of "diabetic neuropathy" in February 2018, other evidence revealed no "objective abnormalities or further diagnosis of neuropathy" in March 2018. (R. 21—22). This explanation is sufficient to justify the ALJ's persuasiveness determination.

Regarding Drs. Meyer and Uran's evaluation of Plaintiff, Plaintiff argues that this evidence should have led the ALJ to further limit Plaintiff's mental functioning in the RFC, particularly because this evidence was consistent in some respects (*e.g.*, its reflection on how often Plaintiff would be absent from work) with other medical opinion evidence. Drs. Meyer and Uran evaluated Plaintiff in the spring of 2019. (R. 972). They noted that Plaintiff's intellectual ability was in the intellectually disabled range. (R. 974). Plaintiff was noted to have a "current mental status" that was "quite poor with indications of overwhelming depression and anxiety as well as social avoidance" with ongoing substance abuse. (R. 976). Diagnoses included major depressive disorder, recurrent episode, severe; generalized anxiety disorder; unspecified personality disorder; tobacco use disorder, severe; cannabis use disorder, severe; and

3

borderline intellectual functioning.  (R. 976—77).  Relying on those findings, Dr. Uran opined that Plaintiff was markedly limited in her ability to understand and remember "detailed instructions" or carry out such instructions.  (R. 978).  She was also found to have marked limitations in her ability to interact appropriately with supervisors and coworkers, respond appropriately to changes in a routine work setting, maintain attention/concentration, behave in an emotionally stable manner, or demonstrate reliability.  (R. 979).  Extreme limitations were opined for Plaintiff's ability to interact appropriately with the public or respond appropriately to work pressures in a usual work setting.  (*Id.*).  Dr. Uran opined that Plaintiff would miss five workdays/month and could not "sustain full time employment."  (R. 980—81).

The ALJ considered Dr. Meyer and Dr. Uran's findings and opinions, but ultimately determined that evidence was "unpersuasive."  (R. 24).  Explaining his rejection of that evidence, the ALJ wrote that the opinions of "marked to extreme mental limitations and the need for excessive absenteeism" were "inconsistent with the evidence, including [Dr. Meyer and Dr. Uran's] own evaluation, and the above-mentioned consultative examinations."  (*Id.*).  Plaintiff's intellectual abilities had not been consistent over the years, her mental health treatment had been infrequent, and, despite her "psychometric test results, depression, and anxiety," she had remained "capable of performing routine daily tasks."  (*Id.*).  Resolving this evidence, the ALJ found that mental limitations beyond those he included in the RFC were unnecessary to accommodate Plaintiff's mental impairments and associated limitations.  (*Id.*).  Because the ALJ addressed this evidence and discharged his duty to explain his rejection of the marked-to-extreme mental limitations and excessive absenteeism opinions (R. 24), the Court will not endeavor to re-weigh that evidence.  *See Williams*, 970 F.2d at 1182.

Concerning Dr. Eisler's opinion, Plaintiff challenges its omission from the ALJ's discussion of the relevant evidence.  While ALJs "may not reject pertinent or probative evidence without explanation," they are neither required to address "all evidence a claimant presents."  *Johnson*, 529 F.3d at 204.  Dr. Eisler's opinion is not patently relevant in this case because it predates the time when Plaintiff sought to prove her disability by more than six years.  Dr. Eisler saw Plaintiff on the 30th of November 2011 and documented his psychiatric evaluation and assessment of functional limitations over the next two days.  (R. 590—93).  In the evaluation, Dr. Eisler recorded that Plaintiff could not "concentrate well and . . . fails to complete tasks that have been started."  (R. 591).  He described symptoms associated with a diagnosis of Major Depressive Disorder and found "evidence of a Generalized Anxiety Disorder," noting that Plaintiff "worries all the time," "has cold sweats," "has palpitations," and "has panic attacks."  (*Id.*).  Dr. Eisler also diagnosed Plaintiff with "Severe Social Phobia, ADHD, and mild retardation," as well as "Drug and Alcohol Dependency—Recovering."  (*Id.*).  He opined her prognosis was poor, that she was "[q]uite unemployable," and that she would remain so for at least one year.  (*Id.*).  In the accompanying assessment, Dr. Eisler addressed what he believed were Plaintiff's functional limitations.  He opined, for instance, that Plaintiff would have no ability or poor ability to "Follow Work Rules" or "Maintain Attention/Concentration."  (R. 592).

4

Though much of the content of Dr. Eisler's evaluation and assessment would appear to be relevant to Plaintiff's case, the substantial time that elapsed between Dr. Eisler's evaluation/assessment and Plaintiff's February 2018 benefits application (wherein she alleged disability onset on January 15, 2018 (R.10)) reduced its probative value such that it was not error for the ALJ to omit it from his decision. Not only that, but to the extent that Dr. Eisler opined that Plaintiff would be "unemployable," his opinion was irrelevant because it went to an ultimate issue reserved to the Commissioner. 20 C.F.R. § 416.920b(c)(3); *Gantt v. Comm'r Soc. Sec.*, 205 Fed. Appx. 65, 67 (3d Cir. 2006) (citing 20 C.F.R. § 404.1527(e) (explaining how opinion evidence is considered for applications filed before March 27, 2017)). The same is true of the Pennsylvania Department of Public Welfare statements wherein Plaintiff was found to be "Temporarily Incapacitated" on a number of occasions. (R. 576, 578, 582, 585, 588, 599, 602, 605, 608, 614, 617, 620). Various diagnoses were associated with her incapacitation during those times, *e.g.*, low back pain (R. 576), depression (*id.*), and panic disorder with agoraphobia (R. 586, 615). The ALJ addressed this evidence but explained that it was "neither valuable nor persuasive" under 20 C.F.R. § 416.920b(c). (R. 25). His explanation adequately justified his rejection of the Pennsylvania Department of Public Welfare evidence. Further, to the extent that Plaintiff argues that the ALJ failed to address how all the medical opinions he rejected supported each other, the Court is unmoved because the ALJ adequately explained his consideration of the relevant opinions and how his consideration of all the relevant evidence informed his decision. (R. 25).

Plaintiff's next argument is that the ALJ erred in evaluating her testimony. She argues that the ALJ set aside her subjective complaints even though medical evidence in the record corroborated them. Plaintiff testified, in relevant part, that she: experienced pain in her back and feet when standing, walking, or sitting; required two-hours of lying down for pain daily; had numbness and tingling in her hands which made them difficult to use; was significantly limited by her mental health impairments and, accordingly, would frequently be absent from work (among other limitations). (Doc. No. 18, pgs. 20—21). Plaintiff argues that her testimony should have been afforded great weight because it was supported by medical evidence and because a claimant's "subjective mental health complaints and complaints of pain" may only be set aside if there is a "rational basis to do so." (Doc. No. 18, pg. 24 (citing *Duncan v. Sullivan*, 786 F. Supp. 466, 470 (E.D. Pa. 1992)).

Having considered Plaintiff's argument, the Court is unpersuaded that the ALJ erred in evaluating Plaintiff's testimony. When complaints of pain are "supported by medical evidence, the ALJ may not discount them without contrary medical evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 n.10 (3d Cir. 1987). However, an ALJ may reject a claimant's subjective complaints "as long as [he] 'affirmatively addresses the issue in his decision, specifies his reasons for rejecting them, and . . . his conclusion is supported by the record.'" *Mastrocesare v. Saul*, No. CV 20-347, 2021 WL 2434587, at *1 n.2 (W.D. Pa. June 15, 2021) (citing *Duncan*, 786 F. Supp. at 470). In this matter, the ALJ clearly considered Plaintiff's complaints of depression, anxiety, sleep disturbance, excessive worry, and impaired concentration, as well as

5

her testimony that she suffered back pain with sitting, standing, and walking. (R. 17—18). He further considered Plaintiff's complaints of blurred vision, dry mouth, fatigue, and neuropathy. (R. 18). Next, the ALJ reviewed the objective medical evidence and medical opinion evidence to assess the "intensity, persistence and limiting effects" of Plaintiff's alleged symptoms in accordance with SSR 16-3p. (R. 18—25); SSR 16-3p, 2017 WL 5180304, at *4 (S.S.A. Oct. 25, 2017) ("In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record[.]"). As the Court has explained herein, it cannot substitute its own weighing of the evidence for the ALJ's fact-finding where the ALJ adequately explained and supported his findings. Therefore, the Court will not disturb the ALJ's resolution of the medical evidence with Plaintiff's subjective complaints.

Two remaining issues require only brief discussion. First, the Court addresses Plaintiff's argument that the ALJ ignored some of the VE's testimony, *e.g.*, that an individual who would need more than 10% off-task time or could not "follow work rules" would not be able to maintain employment. (Doc. No. 18, pg. 22). It is well established that ALJs are not required to address the VE's response to every question that is asked at a claimant's hearing. *Pearson v. Comm'r of Soc. Sec.*, 839 Fed. Appx. 684, 690 (3d Cir. 2020) ("The ALJ's subsequent hypothetical question about a person who would be off-task fifteen percent of the time, does not bind him to the premise of the question, nor to the expert's answer[.]"). The VE's relevant testimony is that which accounts for all the claimant's "credibly established limitations." *Id.* (citing *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014)). In this matter, the ALJ explained how the evidence supported the RFC determination. Accordingly, he did not err in not addressing the VE's testimony about additional, not credibly established limitations.

Second and finally, in a footnote Plaintiff has stated that in addition to the arguments she has raised in her brief, "it also appears that the ALJ improperly evaluated whether Plaintiff met the listing at 12.05 for an intellectual disorder." (Doc. No. 18, pg. 15 n.2). From Plaintiff's phrasing, it is unclear whether she intended to include this issue among her arguments challenging the ALJ's decision. (*Id.*). Assuming she did, her challenge to the ALJ's step-three determination is exceedingly brief—she argues that the ALJ should have found she met the criteria for the intellectual disorder listing because Drs. Meyer and Uran found her IQ to be less than seventy (70) and she was enrolled in special education courses. Assuming further that this argument is not so brief as to be waived, *see Com. of Pa. Dep't of Pub. Welfare v. U.S. Dep't of Health & Hum. Servs.*, 101 F.3d 939, 945 (3d Cir. 1996), the Court is unpersuaded by it. The ALJ thoroughly explained that Plaintiff did not meet the intellectual disorder listings criteria because, though she was in special education classes, she "nonetheless graduated from high school." (R. 16). The ALJ further explained that Plaintiff's IQ scores were inconsistent over time, with decline being attributed to substance abuse. (*Id.*). As the Court has explained throughout this decision, it will not re-weigh evidence where—as here at step-three of the evaluation—the ALJ has adequately explained and supported his decision. For this and the foregoing reasons, the Court will affirm the ALJ's decision.

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 17) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 19) is GRANTED as specified above.

s/ Alan N. Bloch
United States District Judge

ecf:   Counsel of Record